MARY E. C. MacGREGOR AND MARY E. ALWARD, AS EXECU-TRICES OF THE LAST WILL AND TESTAMENT OF EMMA F. CHILDS, DECEASED, PETITIONERS-PROSE-CUTRICES, v. J. H. THAYER MARTIN, STATE TAX COM-MISSIONER, RESPONDENT-DEFENDANT.

Argued October 2, 1940—Decided May 21, 1941.

Before Brogan, Chief Justice, and Justices Parker and Perskie.

For the petitioners-prosecutrices, *John H. Schmid.*

For the respondent-defendant, *David T. Wilentz,* Attorney-General (*William A. Moore,* of counsel).

Brogan, Chief Justice. The writ in this cause was allowed to review a decree of the Prerogative Court which affirmed a determination of the State Tax Commissioner, assessing transfer inheritance taxes on certain *inter vivos* gifts made by Emma F. Childs to her two daughters. The donor, Emma F. Childs, died December 25th, 1936; she was the widow of Samuel S. Childs who died on March 17th, 1925, leaving her his entire estate of approximately $1,193,000. By April 1st, 1926, the administration of the estate left by him had been completed and the account prepared in an informal manner by Mrs. Childs, who was the sole executrix and beneficiary under the will. The gifts under consideration were made at intervals, to wit, in 1926, 1932 and 1934. The donor was 73 years old at the time of her death and each gift was made more than two years before that event. The first of the gifts was made ten years before the donor's death; the last a matter of two years and eight

days prior thereto. None therefore was made "within two years prior to the death of the grantor * * *" whereby it would be "deemed to have been made in contemplation of death." *R. S.* 54:34-1. Consequently the burden is upon the taxing authority to establish that the gifts were made "in contemplation of death." *Moore* v. *Martin,* 125 *N. J. L.* 189; *In re Sachs,* 101 *N. J. Eq.* 709, 712.

The transfers under consideration consisted chiefly of securities and a comparatively small value in real estate. The transfers fall into three classes—those made between November 30th, 1926, and September 18th, 1928; those made in March and June, 1932, and the final transfer of December 17th, 1934. The return filed with the Inheritance Tax Department by those administering the estate of Mrs. Childs listed these transfers as having been made without consideration, being gifts not made in contemplation of death. Proofs were taken at an examination conducted by Mr. William P. Seddon, an investigator of the Transfer Inheritance Tax Bureau. The testimony of the decedent's physician tended to prove that at and during the periods when the transfers were made from Mrs. Childs to her daughters there was "nothing in her physical condition that led her physician to consider early death even as a remote possibility," and the learned Vice-Ordinary so found. We concur in that finding; indeed such conclusion was hardly debatable.

Mrs. Mary MacGregor, a daughter and one of the donees, testified concerning these gifts. With regards to those of 1926 she said that her mother had received her father's entire estate, by will; that her father's will was made in 1900 when the witness was four and one-half years and her sister, the other donee, seven months old; that the mother felt it was the father's intention that what he possessed should be equally divided between the mother and daughters; that they were a "very close family and knew his wishes;" that they were "a family that talked things over;" that the nature of the division was left to the mother's discretion; that there was no agreement when the transfers were made to pay income to the mother or that the property should revert to the mother if the donee should predecease her; that no rights were reserved

by the mother; that she, the witness, took no inventory to ascertain if she had received her full one-third share of her father's estate but that so far as she knew it was so divided at the time.

With regard to the 1932 transfers the witness said they were made pending a tax on gifts about to be imposed by proposed federal statute and that her mother wanted to make gifts to her two daughters at the time and advanced as a further reason for the gift that Mr. Raphael, her sister's husband, was planning to leave the firm with which he was associated and start an independent law practice. The mother, it appears, had a separate estate of her own, the amount of which this witness did not know. As a matter of fact, the mother had an independent estate of about $350,000.

The mother lived with the MacGregors and Mrs. Mac-Gregor managed the household. The mother owned her own automobile, employed a chauffeur and bore the expense incident thereto; she made contribution to the daughter for household expenses for the things "she used." The other daughter, Mrs. Raphael, married in 1930 and lived elsewhere.

Lawrence MacGregor corroborated the testimony of the former witness, his wife. He, accustomed to such matters, effected the actual division of Samuel Child's estate into the three parts. He testified that it was Mrs. Childs' desire to carry out the wishes of her deceased husband. He frankly admitted that after the gifts were made one result would be to "throw all three (federal income tax) returns into lower income tax brackets * * *;" that the 1932 transfers were made to avoid impending gift taxes and that Mr. Raphael, the husband of the second daughter, was about to establish his own law practice. The 1934 transfers, partly in securities and partly in real estate, were made so that the MacGregors might have the farm land in Morris County, owned by Mrs. Childs, and the Raphaels a value equal thereto in securities, the former being desirous of owning a farm, the latter not; that the MacGregors considered currency inflation probable and desired to get "back to the land;" that in keeping with the donor's policy of equal treatment for her children Mrs. Raphael received her gift in securities.

The learned Vice-Ordinary held that these several gifts were made in contemplation of death, *i. e.*, "that the controlling motive was the purpose and intent to make a final disposition of a material part of the donor's estate, by present gift in the place and stead of a testamentary disposition thereof" and sustained the Tax Commissioner that the transfers were so made and therefore taxable.

Like all general concepts, the phrase "in contemplation of death" is not capable of exclusive or precise definition. It is impossible to state a formula which will embrace transfers made "in contemplation of death" and exclude all others. The facts and circumstances of each transaction must be examined and appraised to detect the motive of the donor.

The phrase "in contemplation of death" is not to be considered in relation to the universal expectation that everyone knows that it is appointed that some time he will die. As our federal Supreme Court said in the case of *United States* v. *Wells,* 283 *U. S.* 102, "It must be a particular concern, giving rise to a definite motive. The provision is not confined to gifts *causa mortis,* which are made in anticipation of impending death, are revocable, and are defeated if the donor survives the apprehended peril. The statutory description embraces gifts *inter vivos* despite the fact that they are irrevocable and indefeasible \* \* \*. The dominant purpose (of the statute) is to reach substitutes for testamentary disposition and thus prevent the evasion of the estate tax. \* \* \* As the transfer may otherwise have all the indicia of a valid gift *inter vivos* the differentiating factor must be found in the transferor's motive. Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. \* \* \* The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.'"

If the transfer is made within two years of death the gift is deemed to have been made in contemplation of death in the absence of proof to the contrary. This presumption, however, is, by the statute itself, a rebuttable one. But that is not this case. Here all the transfers were made prior to the two year period and the burden of proving that the gifts were made in contemplation of death is upon the taxing authority. If it be shown that a gift *inter vivos* was made, even though it be prior to the two-year-before death period, and that such gift was in lieu of testamentary disposition of the estate *pro tanto,* such gift is taxable. As we see it, in the last analysis, the test is whether the donor made the gift *inter vivos* in lieu of bequest by will or for the purpose of an evasion of transfer tax liability by the donee.

The learned Vice-Ordinary held that the transfers effected in 1926-1928 were taxable. These transfers were made approximately ten years before the death of the donor. Arrangement was made to make these gifts one year after the death of her husband by whose will she, the donor, as the sole beneficiary, received a sum in excess of a million dollars. The donor had an independent fortune of her own estimated at about $350,000. At the time this gift was made and up to the time the last of them was made, eight years later, there was, as the Vice-Ordinary found, no infirmity in the donor that would lead her or her physician to believe that she thought death would soon overtake her.

The first gift made by the mother lodged in each of the children of Samuel Childs a sum equal to about one-third of the estate which he left to their mother. There was a division of the securities of his estate which, after its administration stood in the mother's name "with an idea of creating three accounts as nearly alike in market value and annual income as possible." The Vice-Ordinary, in his written opinion, held that "the conclusion would be inevitable that these gifts thus made were made by the decedent in contemplation of death, * * * *i. e.,* they were made with, and because of, the intent and purpose of accomplishing thereby a final disposition and distribution of a portion of her estate, in the place and stead

of accomplishing that final disposition and distribution by last will and testament." We are unable to subscribe to this view. We find no evidence in the record of such motive and in the absence of evidence that points to that conclusion we think it is just as probable, in considering probabilities, that the donor desired each of the donees to be financially secure and to discharge the moral obligation mentioned by the witness to carry out the intention of the father that there should be an equal division of his estate between his wife and daughters. His will, it should be remembered, was made at a time when his daughters were very young indeed; it had never been changed and the testimony depicting the family intimacy and the mutual love and affection of the members of the small group leads one to the belief that such was the intention of the father imparted to the mother and that she was respecting his wishes. The Vice-Ordinary considered this testimony hearsay, as indeed it was, concerning what Mr. Childs may have said to his wife, but nonetheless what the mother said to her children, coupled with the writing signed by her at the time division was made, was some evidence of her state of mind then and immediately prior to the transfer.

The daughter, Mrs. MacGregor, in her testimony, said that the members of the family were very close one to the other; that the transfers were made for the reasons stated and unless we discard the testimony as unworthy of belief and resort to conjecture or unsupported inference we cannot say that the underlying dominant motive of the mother was that there might be a present testamentary disposition of the amount of the gifts or a later evasion of a transfer inheritance tax by the recipients.

It is also pointed out in the court below that there were certain discrepancies between the testimony of Mrs. Mac-Gregor and her husband, Lawrence, as to the reason for these gifts. We consider them minor in character and attach little importance to them. It was inevitable that MacGregor, accustomed to tax matters, would reveal that income taxes after the division would be less in the aggregate than before. But there is nothing sinister in this—Mrs. MacGregor cer-

tainly was not as familiar with this phase of the matter as was her husband. The reason advanced by her mother for the transfer, *i. e.,* regard for the father's wishes, would surely be more appealing to her—and the fact that Mrs. MacGregor did not mention the income tax advantage does not impel us to believe that she consciously concealed it. If the court rejected the reason advanced for the division, it does not follow that the motive was to evade taxes. The equalization of the father's estate among the natural objects of his bounty does not dispose of this question. The taxing authority had the burden of proving that the gift was made in contemplation of death and we do not think it discharged that burden. We cannot and should not shift the burden and thus compel the donees in these circumstances to disprove tax liability. We may not extend the provisions of this tax statute by implication. (Compare *Gould* v. *Gould,* 245 *U. S.* 151; *Kluczek* v. *State,* 115 *N. J. L.* 105; *Hill* v. *Treasurer,* 229 *Mass.* 474; 61 *C. J.* 1624, § 2409.) The statute lays down the rule of evidence and we are bound by it. *In re Sachs, supra.* If the testimony was collusive and untruthful there probably would have been no discrepancy. Discrepancy that is not contradiction is often a sign of truthfulness.

In cases of this class under the eleventh section of the *Certiorari* Act (now *R. S.* 2:81-8) it is made our duty to determine disputed questions of fact as well as of law. We cannot affirm the decree of the Ordinary because facts and proof to sustain it are lacking. We do not think it is within the legal competency of the Prerogative Court or this court to find a motive to exist in the absence of facts in proof to support that motive. It is not enough to say, as the court below did, that in addition to carrying out her husband's "supposed" wish, "in all human probability there was also another motive—the desire to save inheritance taxes." There is no basis that we can find in the record to support that conclusion.

If the testimony of the members of the donor's family is to be rejected *in toto,* and there be no testimony at all as to motive, a finding that there was a motive, namely, to avoid

inheritance taxes, is obviously based upon conjecture and not upon proof.

One paragraph of the opinion below reads thus: "There is no testimony by Mr. MacGregor or Mrs. MacGregor or any one else that the matter of saving inheritance taxes was not so discussed, or that Mrs. Childs did not take into consideration the fact that she had already provided by will that all the estate should go to the daughters anyway, on her death." Parenthetically we observe that these witnesses were not asked such question as manifestly they might have been. And again, "On the other hand, in view of all the undisputed facts and circumstances, there is every basis in human probability for the factual inference or conclusion that she did take these things into consideration in determining upon the making of the gifts." Again we observe we find no proof to support this conclusion.

The second class of transfers, *i. e.*, 1932, was held to be assessable under the provisions of the Transfer Inheritance Tax Law. At that time the gift amounted to about $140,000 to each of the daughters. The occasion for the gift was stated to be that the husband of one daughter was beginning an independent law practice. And it is also said that at that time a federal tax on gifts was imminent and that the donor sought to avoid such tax. The Vice-Ordinary did not believe these reasons and indicates that the motive was based upon reasons looking to avoiding inheritances taxes, *i. e.*, by making a present testamentary disposition of the amount involved. He said, "It is difficult to see that any disinterested person could conclude otherwise than that these gifts were made in the place and stead of a testamentary disposition." And "but it would seem impossible that they [the reasons for the gift] could have been the sole, or even real causes for the gifts. * * *." As to this we repeat that the burden of establishing that these gifts were made in contemplation of death was on the taxing authority. We are unable to find such proof. There is no obvious or compelling cause to disbelieve the reasons advanced for the motive. The donor was still a wealthy woman. She was very devoted to her children and

the inference that she bestowed part of her fortune on them from motives of love and affection is equally strong or stronger than that she did it for the purpose of evasion by them of transfer taxes.

The transfer of 1934 by which one daughter received a farm in Chester, New Jersey, and the other had allotted to her the equivalent in securities presents no particular perplexity. Mrs. MacGregor and her husband were fond of country life and had a desire for the farm. The other daughter apparently had no taste for country life and was not interested in farming. But a parent, with wisdom and prudence, will often see to it that all deserving children are treated equally and this seems to us to have been a reasonable and probable conception of what was in the donor's mind. There is adequate evidence to support that conception.

Cases of this kind frequently present problems that do not leave us free from doubt. In matters of taxation the state must be protected and tax evasions should not be tolerated. But there is a duty to the individual that is equally solemn. The statute is clear and explicit in the matter of transfers without adequate consideration or of gifts made within two years prior to the death of the grantor or donor. In the absence of proof to the contrary such transfers shall be deemed to have been made in contemplation of death within the meaning of the statute. But in the matter of *inter vivos* gifts outside the two year period, such as those that here concern us, proof must be presented by the taxing authority sufficient to warrant the conclusion that the transfers were taxable. The taxing authority, in our judgment, did not discharge that burden.

In none of the cases of transfer do we find any evidence of motive to accomplish transfer tax evasion or to make present testamentary disposition of property. The evidence supports a finding of an absence of such motives.

The decree should be reversed, and the tax assessments on the gifts in question should be set aside.